# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| PAUL FOSTER, | ) | |
|    Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| TFORCE FREIGHT, INC. | ) | |
| f/k/a UPS GROUND FREIGHT, | ) | |
|    Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Paul Foster, by and through undersigned counsel, Barrett & Farahany LLP, and hereby files this Complaint against Defendant TForce Freight, Inc., showing the Court as follows:

## Introduction

1. This is an action for discrimination and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

## Parties

2. Plaintiff is a citizen of the United States of America residing in Chambers County, Alabama.

3. Defendant is a Virginia corporation with its principal place of business in Virginia.

4. Defendant is authorized to do business in the state of Georgia.

5. At all relevant times, Defendant employed over 10,000 employees.

6. At all relevant times, Plaintiff's employment with Defendant was based in Atlanta, Georgia.

7. At all relevant times, Plaintiff's supervisors were based in Atlanta, Georgia.

8. At all relevant times, Defendant voluntarily entered into service contracts with multiple federal agencies that had regulations implementing Section 504.

9. At all relevant times, Defendant was a recipient of federal funds.

10. At all relevant times, Defendant was a "motor carrier" as defined in Federal Motor Carrier Safety Administration ("FMCSA") regulations, 49 C.F.R. § 390.5.

## Jurisdiction and Venue

11. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises under the ADA.

12. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises under the ADA.

13. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count III of this Complaint, which arises under the ADA.

14. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count IV of this Complaint, which arises under Section 504.

15. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count V of this Complaint, which arises under Section 504.

16. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count VI of this Complaint, which arises under Section 504.

17. Defendant is subject to specific jurisdiction in the Northern District of Georgia because the employment practices described herein occurred in the Northern District of Georgia.

18. Venue is proper in this Court because the employment practices described herein occurred in the Northern District of Georgia.

## Statement of Facts

19. Plaintiff was hired by Defendant in 1988.

20. In 1988, Defendant was named "Overnite Transportation Company."

21. From 1988 until 2003, Defendant was owned by Union Pacific Corporation.

22. During the first six months of Plaintiff's employment with Defendant, Plaintiff worked on the "dock" loading and unloading packages.

23. After approximately six months of working the dock, Plaintiff was a jockey and city driver.

24. In 1990, Plaintiff obtained his commercial driver's license ("CDL") and became a long-haul driver.

25. As a long-haul driver, Plaintiff drove tractor-trailers across state lines.

26. As a long-haul driver, Plaintiff drove tractor-trailers registered with the Department of Transportation ("DOT").

27. As a long-haul driver, Plaintiff drove "commercial motor vehicles" as defined in 49 U.S.C. § 390.5.

28. Between 2001 and 2004, Plaintiff began experiencing lower back pain.

29. Plaintiff has three herniated disks at L3, L4, and L5 in his lower back.

30. Plaintiff has sciatic nerve damage in both legs.

31. Because of Plaintiff's lower back conditions, he experiences significant pain.

32. Plaintiff's lower back conditions substantially limit the major life activities of walking, standing, lifting, bending, and sitting.

33. Beginning around 2003, Plaintiff took oxycodone for pain.

34. At all relevant times, Plaintiff took oxycodone strictly under medical supervision will valid prescriptions.

35. Despite Plaintiff's lower back conditions, Plaintiff was able to perform his duties without accommodations.

36. Plaintiff also has Type II Diabetes.

37. Plaintiff's diabetes substantially impairs the major bodily functions of the digestive and endocrine systems.

38. While Plaintiff was employed by Defendant, Plaintiff took Metformin for his diabetes.

39. At no point during Plaintiff's employment with Defendant did Plaintiff take insulin.

40. At all relevant times, Plaintiff carried a valid DOT medical card in accordance with 49 C.F.R. § 391.43 issued by a medical examiner certified under 49 C.F.R. § 390.103.

41. In 2003, Defendant was spun off into its own independently owned company.

42. In 2005, Defendant was acquired by United Parcel Service ("UPS").

43. From 2005 until April 2021, Defendant was named "UPS Freight."

44. In or around July 2020, Plaintiff requested an accommodation of temporary reassignment to work the dock due to his diabetes worsening.

45. Defendant granted Plaintiff's accommodation request referenced in Paragraph 44.

46. Because of the accommodation referenced in Paragraph 45, Plaintiff was able to successfully control his diabetes without requiring insulin.

47. In early September, 2020, Plaintiff resumed his duties as a long-haul driver.

48. In April 2021, Defendant was sold to TFI International Inc. ("TFI").

49. In April and May 2021, Defendant was renamed and rebranded as "TForce Freight."

50. At all relevant times, Plaintiff was a member of the Teamsters union.

51. At all relevant times, Plaintiff's employment was covered by a collective bargaining agreement.

52. As relevant to the employment actions described herein, the attached Exhibit 1 is an accurate copy of the collective bargaining agreement covering Plaintiff.

53. Defendant's transition from UPS ownership to TFI did not affect the rights or obligations contained in the collective bargaining agreement as between Plaintiff, the union, and Defendant.

54. Defendant's management below officer-level did not change with the transition from UPS to TFI.

55. On or about April 27, 2021, Plaintiff was required to undergo a drug screening.

56. The drug screening referenced in Paragraph 55 was the first drug screening Plaintiff did following TFI

57. Plaintiff's drug screening referenced in Paragraph 55 came back positive for Oxycodone.

58. Plaintiff had tested positive for Oxycodone in multiple drug screenings prior to the screening referenced in Paragraph 55.

59. On or about May 11, 2021, Plaintiff was notified by his supervisor, Jonathan Hill ("Hill") that his test had come back positive for Oxycodone.

60. Plaintiff explained to Hill that he (Plaintiff) had not yet been contacted by the Medical Review Officer ("MRO") to inquire about his prescription.

61. Plaintiff informed Hill that the MRO had not followed the procedures required for verification of a non-negative result.

62. Plaintiff reminded Hill that he (Plaintiff) had been taking Oxycodone for approximately twenty years.

63. Hill asked for a copy of Plaintiff's "long-copy" DOT medical certification showing the prescription.

64. On or about May 11, 2022, Plaintiff provided Hill the "long copy" DOT medical certification showing the prescription.

65. Plaintiff's DOT medical card was provided by Dr. Eric Crouch, who held a Doctor of Chiropractic degree.

66. On or about May 12, 2021, Plaintiff was instructed to contact the MRO and provide his prescription.

67. On or about May 12, 2021, Plaintiff did contact the MRO and provide his prescription.

68. On or about May 12, 2021, Plaintiff was instructed to see Dr. Benise Williams, who holds a Medical Doctorate.

69. Defendant did not set up an appointment for Plaintiff to see Dr. Williams.

70. Defendant did not pay for Plaintiff to see Dr. Williams.

71. On or about May 14, 2021, Plaintiff did see Dr. Williams.

72. Dr. Williams did not express concern over Plaintiff's Oxycodone prescription.

73. Dr. Williams did note that Plaintiff's A1C was slightly elevated.

74. Dr. Williams requested a "safety letter" from Dr. Crouch.

75. Dr. Williams demanded certifications within the "safety letter" that went beyond what was required by FMCSA requirements.

76. Dr. Williams demanded certifications within the "safety letter" that went beyond what any medical practitioner could certify.

77. Dr. Crouch informed Plaintiff that he (Dr. Crouch) could not meet the demands of Dr. Williams.

78. Dr. Crouch informed Plaintiff that no medical practitioner could meet the demands of Dr. Williams.

79. Dr. Crouch certified that Plaintiff met all requirements for a valid DOT card.

80. Plaintiff presented his updated DOT card and certification to Defendant.

81. Defendant did not refer Plaintiff to any other medical provider.

82. On or about May 14, 2021, Plaintiff's drug screen results were corrected to "negative. . . ."

83. For the first time, Plaintiff's drug screen results were labeled "negative *with safety concerns*" (emphasis added).

84. On or about May 14, 2021, Hill accused Plaintiff of presenting a fraudulent DOT card.

85. Hill's reasoning was that Dr. Crouch was not certified to provide a DOT card.

86. Plaintiff informed Hill that Dr. Crouch was certified by the FMCSA.

87. Hill told Plaintiff that he (Plaintiff) would not be allowed to drive until his record was corrected and a valid DOT card provided.

88. Plaintiff requested an accommodation of working the dock while the process was sorted out.

89. Hill denied Plaintiff's accommodation request.

90. Plaintiff was not permitted to return to work.

91. Plaintiff contacted his union steward to ask if anything could be done.

92. The union took no action.

93. Defendant took no action through the union.

94. In July 2021, Plaintiff again requested to work the dock.

95. Plaintiff's July request to work the dock was denied.

96. Defendant never officially terminated Plaintiff.

97. Defendant never initiated a termination proceeding through the union.

98. Defendant never provided Plaintiff a separation notice.

99. Defendant never allowed Plaintiff to return to work beginning on or about May 11, 2021.

100. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 3, 2021.

101. When Defendant's attorney, Aqueelah Mitchell, prepared Defendant's position statement for the EEOC, Ms. Mitchell quested Hill.

102. When Ms. Mitchell prepared Defendant's position statement for the EEOC, Ms. Mitchell obtained a sworn affidavit from Hill.

103. In Defendant's position statement, Defendant reiterated that Plaintiff's removal from duty and work resulted from Plaintiff provided a DOT card from Dr. Crouch.

104. In Defendant's position statement, Defendant stated, "Mr. Foster provided the Company with an alleged DOT medical card from a *chiropractor*, Dr. Eric A. Crouch.  Dr. Crouch was not a certified medical examiner per federal regulations" (emphasis in original).

105. In Defendant's position statement, Defendant also stated that Dr. Crouch was not a "Company doctor approved for DOT physicals."

106. As a regulated motor carrier, Defendant is required to know and comply with FMCSA regulations.

107. Chiropractors are permitted to obtain DOT certification under 49 C.F.R. § 390.103(a)(1).

108. The FMCSA registry of approved medical examiners is publicly available at https://nationalregistry.fmcsa.dot.gov/.

109. Dr. Crouch is a certified DOT medical examiner.

110. Dr. Crouch's National Registry Number is 4099929343.

111. Dr. Crouch's certification date is listed as March 23, 2014.

112. Plaintiff has obtained his DOT medical cards from Dr. Crouch for years.

113. Defendant has accepted Dr. Crouch's certifications for years.

114. Dr. Williams is not listed on the FMCSA registry.

115. Dr. Williams is not certified to issue or revoke DOT certification.

116. Under Art. 16, § 1(a) of the collective bargaining agreement, Defendant can require certification from a doctor of Defendant's choice.

117. Under the collective bargaining agreement, Defendant must pay for a physical if Defendant requires an employee to see a doctor of Defendant's choice.

118. Plaintiff received his Notice of Right to Sue on August 7, 2022.

## Count I:  Regarded-As Discrimination Under the ADA

119. Plaintiff reasserts and incorporates Paragraphs 1 through 118 as if fully set forth herein.

120. Defendant is subject to the requirements of the ADA, as shown in Paragraph 5.

121. Plaintiff is a qualified individual with a disability, as shown in Paragraphs 28-39.

122. Plaintiff suffered the adverse action of removal from his position.

123. At all times relevant to the decision regarding the adverse action at issue, Plaintiff did not require accommodations to fulfill his job duties.

124. Causation is shown by the focus on his prescription, which was valid.

125. Causation is shown by the close temporal proximity between a report of Plaintiff's use of a prescription medication and the adverse action.

126. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 106-113.

127. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 72-76 and 114-117.

128. As a result of Defendant's actions, Plaintiff has suffered lost wages, lost benefits, emotional distress, harm to reputation, and other damages.

## Count II:  Failure to Accommodate Under the ADA

129. Plaintiff reasserts and incorporates Paragraphs 1 through 128 as if fully set forth herein.

130. Defendant is subject to the requirements of the ADA, as shown in Paragraph 5.

131. Plaintiff is a qualified individual with a disability, as shown in Paragraphs 28-39.

132. Notwithstanding Count I of this Complaint, Plaintiff requested a reasonable accommodation when he was told he could not return to driving.

133. Plaintiff's requested accommodation was reasonable.

134. Under the Art. 21 § 3(a) of the collective bargaining unit, Plaintiff was entitled to displace an inside employee.

135. Plaintiff had worked the docks less than a year prior to this request.

136. Allowing Plaintiff to work the docks would not have posed an undue hardship on Defendant.

137. Defendant unreasonably denied Plaintiff's accommodation requests.

138. As a result of Defendant's actions, Plaintiff has suffered lost wages, lost benefits, emotional distress, harm to reputation, and other damages.

## Count III:  Retaliation Under the ADA

139. Plaintiff reasserts and incorporates Paragraphs 1 through 138 as if fully set forth herein.

140. Defendant is subject to the requirements of the ADA, as shown in Paragraph 5.

141. The communication in Paragraph 61 was a protected disclosure under the ADA.

142. Plaintiff's requests to work the docks in Paragraphs 88 and 94 constituted protected activity under the ADA.

143. Plaintiff suffered the adverse action of removal from his position.

144. Causation is shown by the close temporal proximity between Plaintiff's protected activity and the adverse action.

145. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 106-113.

146. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 72-76 and 114-117.

147. As a result of Defendant's actions, Plaintiff has suffered lost wages, lost benefits, emotional distress, harm to reputation, and other damages.

## Count IV:  Regarded-As Discrimination Under Section 504

148. Plaintiff reasserts and incorporates Paragraphs 1 through 147 as if fully set forth herein.

149. Defendant is subject to the requirements of Section 504, as shown in Paragraphs 8-9.

150. Plaintiff is a qualified individual with a disability, as shown in Paragraphs 28-39.

151. Plaintiff suffered the adverse action of removal from his position.

152. At all times relevant to the decision regarding the adverse action at issue, Plaintiff did not require accommodations to fulfill his job duties.

153. Causation is shown by the focus on his prescription, which was valid.

154. Causation is shown by the close temporal proximity between a report of Plaintiff's use of a prescription medication and the adverse action.

155. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 106-113.

156. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 72-76 and 114-117.

157. As a result of Defendant's actions, Plaintiff has suffered lost wages, lost benefits, harm to reputation, and other damages.

## Count V: Failure to Accommodate Under Section 504

158. Plaintiff reasserts and incorporates Paragraphs 1 through 158 as if fully set forth herein.

159. Defendant is subject to the requirements of Section 504, as shown in Paragraphs 8-9.

160. Plaintiff is a qualified individual with a disability, as shown in Paragraphs 28-39.

161. Notwithstanding Count I of this Complaint, Plaintiff requested a reasonable accommodation when he was told he could not return to driving.

162. Plaintiff's requested accommodation was reasonable.

163. Under the Art. 21 § 3(a) of the collective bargaining unit, Plaintiff was entitled to displace an inside employee.

164. Plaintiff had worked the docks less than a year prior to this request.

165. Allowing Plaintiff to work the docks would not have posed an undue hardship on Defendant.

166. Defendant unreasonably denied Plaintiff's accommodation requests.

167. As a result of Defendant's actions, Plaintiff has suffered lost wages, lost benefits, harm to reputation, and other damages.

## Count VI:  Retaliation Under Section 504

168. Plaintiff reasserts and incorporates Paragraphs 1 through 166 as if fully set forth herein.

169. Defendant is subject to the requirements of Section 504, as shown in Paragraphs 8-9.

170. The communication in Paragraph 61 was a protected disclosure under the ADA.

171. Plaintiff's requests to work the docks in Paragraphs 88 and 94 constituted protected activity under Section 504.

172. Plaintiff suffered the adverse action of removal from his position.

173. Causation is shown by the close temporal proximity between Plaintiff's protected activity and the adverse action.

174. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 106-113.

175. Defendant's articulated reason for refusing to allow Plaintiff to work was pretext, as shown by Paragraphs 72-76 and 114-117.

176. As a result of Defendant's actions, Plaintiff has suffered lost wages, lost benefits, harm to reputation, and other damages.

## Prayer for Relief

WHEREFORE Plaintiff respectfully prays for relief as follows:

A. For a trial by jury;

B. For a finding that Defendant violated Plaintiff's rights as set forth herein;

C. For a judgment in Plaintiff's favor for reinstatement or front pay, back pay plus interest, compensatory damages for emotional distress and harm to reputation, punitive damages, attorney fees, and litigation costs; and

D. For any such other and further relief as the Court deems proper and just.

This 31st day of October, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**
*s/ Micah Barry*
Micah Barry
Georgia Bar No. 103184
Patrick Reid
Georgia Bar No. 88876P[1]
Provisionally Admitted Attorney
*Attorneys for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353-0092
(404) 214-0120
(404) 445-1018
(404) 214-0125 facsimile
micah@justiceatwork.com

---

[1] Matthew Billips is the Supervising Attorney for Patrick Reid
Georgia Bar No. 057110

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 31st day of October, 2022.

                                                Respectfully submitted,

                                                **BARRETT & FARAHANY**

                                                *s/ Micah Barry*
                                                Micah Barry
                                                Georgia Bar No. 103184

## FONT AND POINT CERTIFICATION

The undersigned counsel for Plaintiff certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 31st day of October, 2022.

                                          Respectfully submitted,

                                        **BARRETT & FARAHANY**

                                        *s/ Micah Barry*
                                        Micah Barry
                                        Georgia Bar No. 103184